(31 Misc. Rep. 603.)

## MURRAY v. SWEASY et al.

(Supreme Court, Special Term, New York County. May, 1900.)

MORTGAGE—ABSOLUTE DEED—ACTION TO REDEEM—DISPOSSESS PROCEEDINGS
—INJUNCTION.

Plaintiff bought a house subject to a mortgage, which he assumed, and subsequently failed to pay taxes on the property for several years. In March, 1898, at the instance of S., who represented the mortgagee, plaintiff gave notes to A. for the unpaid taxes, and conveyed the premises to A., taking back a lease for a year at a rent equal to the interest on the mortgage plus taxes, insurance, and water rates. In August, 1898, on default in payment of the notes, A. brought suit on them, in which plaintiff made default. In April, 1900, plaintiff offered to pay off all liens, which S. refused, claiming title to the property. Immediately thereafter A. entered judgment in his action on the notes, and began proceedings to recover possession of the premises. Plaintiff then brought this action, and moved for an injunction against the dispossess proceedings till the determination of this action, claiming that the deed to A. was intended only as security. On the motion, S. admitted that he had given plaintiff an option to repurchase the premises till October, 1899. *Held*, that the dispossess proceedings should be stayed till the determination of this action, so that the question whether the deed to A. was given as security or not might be tried in the usual way.

Action by Henry Murray against J. Frederick Sweasy and others. Motion by plaintiff for an injunction to stay a proceeding by defendant against him for dispossession of real estate. Granted.

Howe & Brown, for plaintiff.
Thomas Sherman, for defendants.

ANDREWS, J. The premises No. 21 East Seventy-Third street, in this city, were purchased by the plaintiff on September 6, 1887, and have been continuously occupied by him and his family from that date to the present time. The purchase price was $45,000, and the property was subject to a mortgage of $35,000, the payment of which was assumed by the plaintiff, and which is still an incumbrance upon the property. The plaintiff failed to pay the taxes for several years, and on or about March 7, 1898, at the instance of the defendant Sterling, who represented the mortgagee, the plaintiff gave two series of notes, one of twenty and another of seven, for said arrears of taxes, payable to one J. Frederick Sweasy; and at the same time, as is claimed by the plaintiff, by the direction or at the request of said Sterling, he and his wife conveyed said premises to the defendant, said Sweasy. At the time of the execution of such deed, or soon thereafter, said Sweasy executed a lease of said premises to the plaintiff for one year; the amount of rent reserved in the lease being equal to the annual interest on the mortgage and the annual taxes on the property, the water rates, and the premium of insurance. Four of the notes were paid. The others were not paid, and on or about August 25, 1898, the plaintiff was served with a summons and complaint in an action brought by said Sweasy to collect the amount of the notes; it being provided in each of the notes that, in case there was a failure to pay any particular note, all the notes should become due. No answer was served in said action, and subsequently various interviews and negotiations were had be-

tween the plaintiff and Mr. Betts, who was a clerk in the office of said Sterling. On April 17, 1900, the plaintiff telephoned to said Betts that he had arranged to obtain the money and pay the mortgage, the notes, and other liens against said premises, and requested him to prepare a statement of the exact amount due. According to the affidavit of the plaintiff, said Betts replied over the telephone: "Good! I am glad of it, and I will make up a statement." On the next day, April 18th, the plaintiff called at the office of the defendant Sterling, and saw said Betts, and again stated that he was ready to pay off all incumbrances upon the property and get back a deed. After this interview the plaintiff states that he was told by said Betts that he would be informed next morning, over the telephone, of the exact amount of the liens and incumbrances against the property, including mortgage, notes, and interest thereon. The next morning plaintiff received a message from said Betts, over the telephone, stating that Mr. Sterling would not accept any sum whatsoever in payment of the liens and incumbrances upon the property, and that Mr. Sterling claimed that the property was his, and refused to take the money. After receiving this message, plaintiff went to the office of said Sterling, and saw said Betts, and again offered to pay the amount which might be found due to date. On April 20, 1900, plaintiff, at the request of said Betts, made over the telephone, called again at the office of Mr. Sterling, and was asked to sign some paper, which he declined to do. On April 21, 1900, in the action commenced by Sweasy in August, 1898, a judgment was entered against the plaintiff in the sum of $6,595.59; and thereupon said Sweasy commenced proceedings in the municipal court, Seventh district, borough of Manhattan, to dispossess the plaintiff from said premises. The plaintiff then commenced this action, and now applies for an injunction restraining said Sweasy from prosecuting said dispossess proceedings until the trial of this action. In the affidavit of the plaintiff upon which this motion is made, he states that the deed of the premises in question was given as collateral security, only, for the payment of said notes; and he also states that it was well understood between the parties to this action and the representatives of said Sterling, in his office, that said deed was held only as collateral security to secure the payment of said notes, and the lease was part of the same transaction, and was executed solely for the same purpose. The plaintiff admits in such affidavit that he never had any interviews with the defendant Sterling in relation to the matters above referred to, but that all his conversations were with said Betts. In the answering affidavits, said Sterling denies that the deed was taken as collateral security, and states that Betts had no authority to so receive it; and said Betts states that there never was any agreement, arrangement, or understanding between him and the plaintiff that the deed should be received as collateral security. Mr. Sterling and Mr. Betts both state in their affidavits that the arrangement which resulted in the giving of the deed, the lease, and notes was made entirely upon the request and for the benefit of the plaintiff; that the taxes had not been paid for a number of years, and the mortgage was about to be

foreclosed; that the plaintiff had assumed payment of the mortgage, and therefore would be liable if there should be a deficiency; that the plaintiff feared there would be a deficiency on a sale under a decree of foreclosure, and offered to give a deed of the property to Mr. Sterling, or to any person named by him; and that thereupon the deed, notes, and lease were all given. As above set forth, Mr. Sterling states that Mr. Betts had no authority to agree that the deed should be given as collateral security, and Mr. Betts states that there was no agreement whatever between him and the plaintiff that the deed should be so given. Mr. Sterling, however, is fair and candid enough to make the following admission in his affidavit:

"But he asked, as a further matter of favor, that he should be given an option until October, 1899, in which to repurchase the premises on certain conditions; and to this I assented."

This admission I regard as of importance; for, so far as the decision of this motion is concerned, it is not material whether the deed was to be regarded as collateral security, or whether there was an agreement that the plaintiff might repurchase the premises, and the final disposition of this action will not depend upon the determination of difficult questions of law, but of those questions of fact. The plaintiff's affidavit is open to the criticism that he swears to conclusions, rather than to facts, but I assume that what he intended to swear to was that there were conversations between him and Betts by which an agreement was made that the deed should be regarded as collateral security. It is this that is flatly contradicted by Mr. Betts. It appears, however, by the above-quoted admission of Mr. Sterling, that, whether the plaintiff or Mr. Betts is correct in his statement as to whether there was an agreement that the deed should be given as collateral security, the plaintiff did have an option from March, 1898, to October, 1899, to repurchase the property, on some conditions, which are not stated. Under these circumstances, I think the motion for an injunction until the trial of the action should be granted. I cannot determine upon the ex parte affidavits of the plaintiff and Mr. Betts whether there was an agreement that the deed should be regarded as collateral security, and the plaintiff, as matter of common fairness, should be given an opportunity to have that question tried in the usual way before he is dispossessed. Mr. Sterling and Mr. Betts both state that Mr. Betts had no authority to make such an agreement. But, even if he did not, he may have had apparent authority, so that, if he did make the agreement, Mr. Sterling would be bound by it. Moreover, as there was an agreement, which was apparently in force up to as late a time as October, 1899, that the plaintiff might repurchase the premises, the plaintiff ought to have the opportunity of showing, if he can, that the time within which he was originally given the right to repurchase had been in some way extended, and that the conditions upon which the right to repurchase depended were fulfilled. Of course, I cannot predict whether the plaintiff will succeed in the trial, but it seems to me that he ought not to be dispossessed until he has had an opportunity to try the action. The motion, therefore, will be granted, with $10 costs to abide the event.

Motion granted, with $10 costs to abide event.